Charles O. Gunther, Jr., and Isabel M. Gunther, Husband and Wife v. Commissioner.
Gunther v. Commissioner
Docket Nos. 40174, 48792.
United States Tax Court
T.C. Memo 1954-181; 1954 Tax Ct. Memo LEXIS 65; 13 T.C.M. (CCH) 984; T.C.M. (RIA) 54287; October 21, 1954, Filed *65 Petitioner Charles O. Gunther, Jr., is a certified public accountant who practiced his profession in Baltimore, Maryland, as a sole proprietor in 1948 and 1949 and in partnership during 1950. Held: 1. Certain business expenses, including traveling expenses incurred in servicing out-of-town accounts, automobile expenses, convention expenses, and entertainment expenses, determined and are deductible. 2. Amounts spent for petitioner's suppers on nights he worked overtime in his place of business and for his meals at supper meetings of accountants' organizations are not deductible. 3. Expenses incurred in selling petitioner's home, and the adjusted basis thereof, determined. Charles O. Gunther, Jr., C.P.A., for the petitioners. A. Russell Beazley, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined the following deficiencies in petitioners' income taxes for the calendar years 1948, 1949, and 1950: Docket No.
Year
Deficiency
40174
1948
$603.34
40174
1949
905.68
48792
1950
531.44 The deficiencies result from the disallowance of expense deductions claimed by petitioners for each of the years in issue and from the Commissioner's determination that, for 1949, petitioners' capital gain on the sale of their home was in excess of that reported. At the hearing petitioners conceded that respondent was correct in disallowing deductions for *67 "Contributions" in the amounts of $55 for 1948 and $87.50 for 1949. Those conceded adjustments will be reflected in the Rule 50 computation. Findings of Fact Charles O. Gunther, Jr., and Isabel M. Gunther are husband and wife who, during the tax years in issue, lived in Baltimore, Maryland, and filed their income tax returns with the Collector of Internal Revenue in that city. Isabel M. Gunther is involved in these proceedings only as a result of having filed joint returns with her husband for the years 1948 through 1950. Consequently, references hereinafter to petitioner are intended as references solely to Charles O. Gunther, Jr. Petitioner is a certified public accountant who, during 1948 and 1949, practiced his profession as a sole proprietor under the name of Bartels & Spamer. During 1950, he practiced under the same name in partnership with George O. Sparks. 1948 For 1948, petitioner's gross income from his accounting practice was $33,507.06 and he reported as net profit therefrom $10,683.87. In arriving at that net profit figure petitioner claimed deductions for certain expenditures, the following of which were in part disallowed by respondent: Respondent's Action
Petitioner's
Item
Claim
Allowed
Disallowed
Traveling
$4,132.21
$2,188.00
$1,944.21
Suppers
858.00
358.00
500.00
Miscellaneous
686.77
549.02
137.75
*68 "Traveling" was broken down by petitioner at the hearing of this proceeding in Schedule No. 1 which he introduced in evidence as follows: 124 days travel, servicing out-of-
town accounts, at $16.50 per day
$2,046.00
National Association of Cost Ac-
countants (NACA) Convention,
New York, N. Y.
700.00
NACA Conference, Atlantic City,
N.J.
300.00
Trip to Birmingham, Ala., to inter-
view George O. Sparks
400.00
Transportation
600.00
Entertaining
86.21
Total
$4,132.21
Petitioner's book entries for "Traveling Expenses" totaled $4,132.21 and he produced a group of 29 checks adding up to that amount. Included in that group were checks totaling $2,500 drawn to the order of, endorsed and cashed by petitioner in Baltimore. No other documentary evidence of petitioner's claimed expenses for "Traveling" was presented outside of some of his hotel bills for 1948, the total charges in which equaled $344.44. Petitioner claimed that his average daily expenses, exclusive of transportation costs, for the 124 days he traveled in servicing out-of-town accounts were composed of the following: Breakfast
$ 1.25
Lunch
1.50
Dinner
3.00
Room
6.00
Gratuities
1.50
Laundry
1.00
Car Storage
1.25
Miscellaneous
1.00
Total
$16.50
*69 Petitioner adopted these figures on the basis of an estimate of average traveling expenses which appeared in the Baltimore Sun, a newspaper published in the city in which petitioner lived. His trips were made to towns and small cities. We find his expenses averaged $10 a day, or $1,240, for the 124 days which petitioner actually spent in the servicing of the accounts of his out-of-town clients. An additional $360 was spent for expenses of employees who occasionally accompanied petitioner and for necessary expenses incurred by petitioner on layover, nonworking weekends not counted in the 124 days. Petitioner's correct deduction for those business trips totaled $1,600, instead of the $2,046 which he claimed on Schedule 1 which he introduced in evidence. Petitioner was a past president of the Baltimore Chapter of the National Association of Cost Accountants, sometimes hereinafter referred to as NACA, and was very active in that organization. He was chairman of the convention committee for his chapter of the organization. In June 1948, petitioner went to the NACA convention in New York City, the complete trip taking about one week. He maintained a two-room suite at the convention hotel *70 in which he entertained chapter members and their guests. NACA did not reimburse him for these expenses but he derived business from his attendance at the convention and his activities therein. Petitioner deducted $700 for the expenses of that convention. No evidence regarding the specific amounts of those expenditures was presented. Petitioner's expenses for the convention, considering all the factors of expense in evidence, we find were $500. From November 3 through November 6, 1948, petitioner attended a NACA conference in Atlantic City, New Jersey, and claimed an expense deduction of $300 therefor, exclusive of transportation. The hotel bill for that conference, on which is included two restaurant charges, was $47.35. No evidence regarding the specific amounts of any other expenses was presented. Petitioner did testify that he incurred certain expenses in entertaining clients. Petitioner's expenses for that conference, considering all the factors in evidence, we find were $200. Petitioner, for reasons of health, went on a vacation to New Orleans, Louisiana, accompanied by his wife. En route he stopped at Birmingham, Alabama, to interview George O. Sparks whom he hired and who *71 subsequently became his partner. Petitioner stated that the entire trip cost him $1,200 and estimated that $400 thereof was chargeable as a business expense ascribable to the interview with Sparks in Birmingham. He deducted that amount in his return. We find no basis for so large a deduction. Petitioner did hire Sparks as a result of that interview and Sparks turned out to be a valuable employee of petitioner. Apparently petitioner spent a day or two in Birmingham contacting and negotiating with Sparks. Petitioner incurred as much $30as expense in contacting and hiring Sparks and this is deductible as a business expense. Petitioner drove approximately 27,000 miles on business in 1948 and, as aforementioned, included in his "Traveling" account a $600 deduction for transportation. However, his return also contains an account labeled "Automobile Expenses" under which there is deducted $909.65 representing the cost of 2,700 gallons of gasoline, 180 quarts of oil, tires, tubes, parking and gratuities. The Commissioner in his determination of the deficiency allowed the deduction of this $909.65. The $600 deduction included in the "Traveling" account is a double deduction and is properly *72 disallowed in full. The final item included in the "Traveling" account is $86.21 which petitioner estimated he spent in entertaining while on his trips to service accounts. No evidence was presented substantiating this amount in detail. We are convinced from the testimony of petitioner that he spent some money in entertaining customers when he was away from Baltimore servicing their accounts. Upon the general evidence in the record we find that petitioner expended $50 in 1948 in entertaining these out-of-town customers. Petitioner's "Traveling" expenses for 1948 are, in summary, as follows: Item
Amount
Servicing out-of-town accounts
$1,600.00
NACA Convention, New York, N. Y.
500.00
NACA Conference, Atlantic City,
N.J.
200.00
Birmingham, Ala., interview
30.00
Transportation [already allowed by
Commissioner]
None
Entertaining
50.00
Total
$2,380.00
Petitioner deducted $858 for "Suppers." He paid $358 of that sum to employees who worked overtime and claimed that he spent the remaining $500 for his own suppers on nights he worked overtime, and for his meals at supper meetings of accountants' organizations. Respondent disallowed the $500. This disallowance *73 was proper. Petitioner deducted $686.77 as "Miscellaneous" expenses and respondent disallowed $137.75 thereof, claiming that such amount was a double deduction of automobile expenses already deducted in petitioner's "Automobile Expense" account. Only $74.75 in automobile expenses was included in petitioner's "Miscellaneous" account and such expenses were actually incurred in addition to those listed in the "Automobile Expense" account. Respondent's disallowance is in error. 1949 Petitioner's gross income from his accounting practice for 1949 was $34,808.02 and he reported $8,358.17 as net profit therefrom. In arriving at the net profit figure petitioner claimed deductions for certain expenditures, the following of which were in part disallowed by respondent: Respondent's Action
Petitioner's
Item
Claim
Allowed
Disallowed
Traveling
$4,054.30
$1,884.00
$2,170.30
Suppers
668.55
218.55
450.00
Miscellaneous
807.42
456.13
351.29
"Traveling" was broken down by petitioner as follows: 107 days travel, servicing out-of-
town accounts, at $16.50 per day
$1,765.50
NACA Convention, Chicago, Ill.
900.00
NACA Conference, New York, N. Y.
300.00
Entertaining, Silver Run, Md.
150.00
Entertaining, Carlisle, Pa.
100.00
Entertaining, Hanover, Pa.
238.80
Transportation
600.00
Total
$4,054.30
*74 Petitioner's book entries for "Traveling Expenses" totaled $4,054.30 and he produced a group of 29 checks adding up to $4,359.30. Included in that group were checks totaling $2,600 drawn to the order of, endorsed and cashed by petitioner in Baltimore. No other documentary evidence of petitioner's claimed expenses for "Travelnig" was presented outside of some of his hotel bills for 1949, the total charges in which equaled $418.45. Petitioner maintained that his average daily expenses, exclusive of transportation costs, for the 107 days he traveled in servicing out-of-town accounts totaled $16.50. That sum was composed of the same elements as his claimed average daily expenses for 1948 and was adopted from the same newspaper source. Petitioner's business trips were to towns and small cities. His expenses average $10 a day, or $1,070 for the 107 days. An additional $310 was spent for expenses of employees who occasionally accompanied petitioner and for necessary expenses incurred on layover, nonworking weekends not counted in the 107 days. Petitioner's correct deduction as travel expenses for those business trips totaled $1,380. Petitioner attended the NACA convention in Chicago *75 from June 17 through June 20, 1949. He claimed a $900 deduction for transportation, living and entertainment expenses in connection with the convention. Petitioner was convention chairman of his chapter. He looked after the entertainment in part of twenty to forty people from the Maryland chapters and had a general meeting place for them in his hotel suite. Many of these people were men with whom he transacted business. From the evidence as to this item we find that petitioner incurred and paid $450 expenses for transportation, meals and lodging, and entertainment of certain guests from whom he received business in attending this Chicago convention of NACA. Petitioner attended a 3-day NACA conference in New York City and claimed an expense deduction of $300 therefor. Petitioner's expenditures for this regional conference were of the same nature as those of the Chicago convention. We find that petitioner incurred and paid for transportation, meals and lodging, and entertainment at this New York regional conference, $150. Petitioner is entitled to deduct this $150 instead of the $300 which he claimed. Petitioner claimed a deduction totaling $488.80 for entertaining clients and business *76 associates while on his trips to service accounts in Silver Run, Maryland, and Carlisle and Hanover, Pennsylvania. No definitive evidence regarding those expenditures was presented in detail. Only very general testimony was presented. We find that $150 was expended by petitioner in the entertainment of these clients at those places. Petitioner is entitled to deduct $150 instead of the $488.80 which he claimed as a deduction for these entertainment expenses. Petitioner drove approximately 28,000 miles on business in 1949 and, as aforementioned, included in his "Traveling" account a $600 deduction for transportation. However, his return also contains an account labeled "Automobile Expense" under which there is deducted $955.80 representing the cost of 2,826 gallons of gasoline, 135 quarts of oil, tires, tubes, parking, and gratuities. Respondent in his determination of the deficiency has allowed this deduction of $955.80. He disallowed the $600 deduction which petitioner claimed in his "Traveling" account. The $600 deduction included in the "Traveling" account is a double deduction and is properly disallowed in full. Petitioner's "Traveling" expenses for 1949 are, in summary, as *77 follows: Item
Amount
Servicing out-of-town accounts
$1,380.00
NACA Convention, Chicago, Ill.
450.00
NACA Conference, New York, N. Y.
150.00
Entertaining - Silver Run, Md.;
Carlisle and Hanover, Pa.
150.00
Transportation [already allowed by
Commissioner]
None
Total
$2,130.00
Petitioner deducted $668.55 for "Suppers." He paid $218.55 of that sum to employees who worked overtime and claimed that he spent the remaining $450 for his own suppers on nights he worked overtime and for his meals at supper meetings of accountants' organizations. Respondent disallowed the $450. This disallowance was proper. Petitioner deducted $807.42 as "Miscellaneous" expenses and respondent disallowed $351.29 thereof, claiming that such amount was a double deduction of automobile expenses already deducted in petitioner's "Automobile Expense" account. In the "Miscellaneous" account was included $394.48 in automobile expense, all but $91.47 [1] of which was actually incurred in addition to the expenses listed in the "Automobile Expense" account. Respondent erred to the extent that he disallowed more than that $91.47. *78 In 1949, petitioner sold his home for a gross sale price of $11,000, reporting $867.80 as expenses of sale. He reported the basis of the home as $9,844.16, composed of its purchase cost to him in 1931 of $5,137.01 plus $4,707.15 allegedly expended since then on capital improvements and additions. The resulting profit was $288.04, 50 per cent of which ($144.02) was reported as long-term capital gain. Respondent determined that expenses of sale were $550, rather than $867.80, and petitioner introduced no evidence in contravention of that determination. Respondent also estimated that petitioner expended no more than $2,750 on capital improvements and additions and reduced petitioner's basis by the difference between that sum and $4,707.15 for lack of substantiation. These adjustments resulted in the increase of petitioner's profit to $2,562.99 and his long-term capital gain to $1,281.50. When petitioner purchased the house in 1931 it was run down and had been the subject of reports to the local health authorities. It needed many improvements and additions, which petitioner made, but petitioner was unable to produce bills or records indicating the exact cost of many of those items. *79 Petitioner spent $4,000 on the improvements and additions. His profit on the sale of the house in 1949 was, consequently, $1,312.99 ($11,000 less $550 expenses of sale and less adjusted basis composed of $5,137.01 plus $4,000) and his long-term capital gain thereon was $656.50. 1950 In 1950, petitioner conducted his accounting practice in partnership with George O. Sparks. The partnership reported ordinary net income of $16,730.68 and petitioner's return reported his share thereof as $10,068.62. The following expenses deducted by the partnership are here in issue: Respondent's Action
Partnership's
Item
Deduction
Allowed
Disallowed
Traveling
expenses
$2,652.60
$1,300.00
$1,352.60
Supper expense
(for peti-
tioner
180.00
180.00 Respondent's adjustments resulted in the increase of partnership income by $1,532.60, and 75 per cent thereof ($1,149.45) was charged by respondent to petitioner. The following expenses, allegedly arising from the partnership's business, were deducted in petitioner's individual return rather than in the partnership return and are here in issue: Respondent's Action
Petitioner's
Item
Claim
Allowed
Disallowed
Entertaining
clients
$1,006.56
$1,006.56
Automobile
expenses
1,632.20
$ 906.78
725.42
*80 The partnership's ledger account for "Traveling Expenses," which does not include transportation costs, totaled $2,652.60. Of that sum, $812.27 was charged as expenses of a NACA convention and the remainder, $1,840.33, was charged as expenses of servicing accounts of out-of-town clients. Petitioner produced a group of 25 checks which added up to $2,826.76; included in that group were checks totaling $900 drawn to the order of, endorsed and cashed by petitioner in Baltimore. Petitioner traveled approximately 122 working days servicing out-of-town accounts. Some of his hotel bills for those trips, on many of which are included restaurant charges, were presented in evidence. Total charges thereon were $471.09. Those bills, plus the aforementioned checks, were the only documents substantiating his ledger entries of $1,840.33 for travel expenses in servicing out-of-town accounts. We find petitioner's expenses averaged $10 a day for the 122 days, or $1,220. An additional $350 was spent for expenses of employees who occasionally accompanied petitioner and for necessary expenses incurred on layover, nonworking weekends not counted in the 122 days. The partnership's correct deduction for *81 those business trips totaled $1,570, rather than $1,840.33. The NACA convention was attended by petitioner in New York City from June 18 to June 22, 1950. He claimed a deduction of $812.27 as expenses incurred and paid in attending that convention. The hotel bill for that convention, on which is included restaurant charges, totaled $259.81. No evidence regarding the specific amounts of any other expenditures was presented. We find from the evidence in general that petitioner expended $400 in attending the NACA convention held in New York City. The partnership's "Traveling Expenses" for 1950 are, in summary, as follows: Item
Amount
Servicing out-of-town accounts
$1,570.00
NACA Convention, New York, N. Y.
400.00
Total
$1,970,00
A deduction of $180 was taken by the partnership for money allegedly spent by the petitioner for suppers on the evenings he worked overtime, and for his meals at super meetings of accountants' organizations. Respondent disallowed that deduction. This disallowance was proper. The item of $1,006.56 which petitioner lists on his individual return for 1950 under the heading of "Entertaining Clients" was composed of the following items: *82 Waldorf Astoria Hotel, New York,
N. Y.
$ 159.81
Penn Atlantic Hotel, Atlantic City,
N. J.
9.79
Dawson Severn Park Grocery Store
331.96
NACA Theatre Party
80.00
Maurice Ogle, $550.00 - 50% business
275.00
NACA officers and directors meeting
August 18, 1950 - 56 guests
150.00
Total entertaining
$1,006.56 We find from the general testimony of the petitioner that $419.60 was expended by him in the entertainment of clients in 1950 and that the partnership is entitled to deduct that amount in computing its net income instead of the $1,006.56 which petitioner deducted on his return. Petitioner's individual return for 1950 listed a deduction of $1,632.20 for "Automobile Expenses." Petitioner drove a 1948 Buick about 20,000 miles on business in 1950, which was about 90 per cent of the total mileage the car was driven in that year. The following expenses in connection therewith are deductible: Depreciation on car [1]
$ 570.92
Garage (storage and repairs)
357.47
Gasoline (2,000 gallons at 23 cents)
460.00
Oil and grease
44.82
Gratuities
46.80
Total
$1,480.01
*83 Petitioner claimed a deduction for the cost of 2,286, rather than 2,000, gallons of gas. The lower gallonage figure is correct in view of the mileage driven on business in 1950. Petitioner also claimed a deduction of $86.40 for use of a second garage. A deduction for use of a second garage was not claimed in 1948 or 1949 and no evidence was presented supporting the propriety of such a deduction for 1950. In all other respects the findings accord with petitioner's claimed "Automobile Expenses." Opinion BLACK, Judge: The issues in this case are for the most part factual, turning upon whether the petitioner has sustained his burden of proving that he actually incurred the expenses he seeks to deduct. What was said by the court, therefore, in , is particularly pertinent: "A taxpayer always has the burden of establishing his right to any claimed deduction for income tax purposes. Where he seeks to have a deduction allowed by the Board of Tax Appeals, as an ordinary and necessary business expense, within the meaning of section 23(a) * * * he must furnish as definite proof as is reasonably possible, in the situation and circumstances, *84 of the nature and details of the expenditures claimed to have been made. If the evidence is convincing that expenditures have thus been made, but the taxpayer is able to furnish only general proof of their nature and details, the Board should consider all the evidence in the light of its general experience and make such allowance for the sums expended as it conscientiously feels would represent fair and reasonable expenses for such ordinary and necessary purposes in the circumstances of the taxpayer's business. [2] * * *" In the consideration of the instant case we have endeavored to observe the rule announced by the court in the above quotation. Petitioner was engaged in the accounting profession during the tax *85 years in issue, conducting his practice as a sole proprietor in 1948 and 1949 and as a partnership in 1950. For each of the years involved petitioner claimed deductions for "Traveling" expenses. [3] Under that general heading was included a number of items, the first of which was petitioner's expenses, exclusive of transportation costs, incurred in servicing out-of-town accounts. Petitioner testified that, for 1948 and 1949, he determined those expenses to be $16.50 per day for each day, exclusive of nonworking weekends, he spent on the road servicing accounts. Petitioner stated that $16 a day was reported by the Baltimore Sun as average daily traveling expenses for businessmen. The petitioner, in the course of his testimony at the hearing, testified as follows: "The Baltimore Sun made a survey of traveling expenses. They said it cost $16.00 a day. "If we were to take that, my traveling expenses, which include automobile expenses, it would come to $16.50 a day. I know I don't spend that. "So if you would raise this time charged to the client to a seven-sevenths of a day, my expense would be a good bit lower than $16.00. In fact, I think it would be around $10.00 a day." *86 It is too clear for argument that an estimate of petitioner's expeses drawn from a newspaper report falls far short of the proof required to support his claims. However, the circumstances call for the application of the doctrine of (C.A. 2), and, in accordance therewith, we have concluded that $10 per working day spent out of town in servicing accounts is here the appropriate expense allowance. Moreover, we have taken into account the sums spent by petitioner to cover the expenses of employees who sometimes accompanied him on his trips, plus the necessary expenses he incurred when it was expedient for him to remain on the road over a weekend, even though no work could then be performed. Such expenses are "ordinary and necessary" within the meaning of section 23(a)(1) of the 1939 Code and are deductible by petitioner under either that section or in computing his adjusted gross income under section 22(n)(1). The traveling expenses of petitioner for the year 1948, 1949, and 1950 thus arrived at are included in our Findings of Fact. In a recomputation under Rule 50 they should be used as deductions instead of the amounts claimed by *87 petitioner on his returns and the amounts allowed by the Commissioner in his determination of the deficiencies. Petitioner also claimed deductions in the "Traveling" expense account for NACA conventions and conferences attended in 1948, 1949, and 1950, and for entertainment during 1948 and 1949 of out-of-town clients while in their cities servicing their accounts. , affd. on another issue (C.A.D.C.) ; ; . Again we find a lack of adequate substantiation for the amounts claimed but have applied , to determine the proper sums which, in our opinion, are deductible for those activities, which sums are set forth in our findings. Petitioner failed to substantiate a $400 deduction claimed, in the "Travel" expense account for 1948, as expenses incurred on a trip to Birmingham, Alabama, to interview a prospective employee whom he in fact hired and who subsequently became his partner. The facts in the instant case were that petitioner and his wife merely stopped over in Birmingham while on a vacation trip *88 to New Orleans. Petitioner testified that the entire New Orleans trip cost $1,200 and he estimated that $400 thereof was chargeable to the Birmingham interview. Although we think that expenses bona fide incurred in interviewing prospective employees are "ordinary and necessary" there is no evidence which we regard as sufficient to establish the amount of this deduction as $400. Petitioner testified that he stayed in Birmingham two nights on the trip to New Orleans mainly to see and talk with Sparks and that he entertained him at dinner while there. Under the circumstances we have found that $30 is the appropriate deduction for expenditures of an incidental nature incurred in connection with the interview. Cf. The final items included in petitioner's "Traveling" expense accounts for 1948 and 1949 were transportation expenses intended to cover the costs of petitioner's trips to service out-of-town accounts, which trips were made exclusively by automobile. We have found, however, that each of petitioner's returns for 1948 and 1949 also included an account labeled "Automobile Expense" in which were included certain automobile costs of those *89 trips. The Commissioner allowed these amounts. Consequently, petitioner improperly took double deductions for those expenses in his "Traveling" account. Petitioner, on the other hand, did incur in 1948 and 1949 additional automobile expenses for storage and repairs, all evidenced by statements which he introduced in evidence. Some of those additional expenses were recorded in petitioner's "Miscellaneous" rather than "Automobile Expense" account for 1948 and 1949, but respondent disallowed them as deductions in the "Miscellaneous" account. Respondent erred in that disallowance, except to the extent of $91.47 in 1949, which did constitute a duplication of expenses for gas, oil and tires already charged in the "Automobile Expense" account for that year. For each of the years 1948 through 1950, petitioner deducted, [4] and respondent disallowed, amounts which petitioner alleged were spent for his suppers on nights he worked overtime, and for his meals at supper meetings of various accountants' organizations. It is clear from our decision in , that an individual's expenses for evening meals eaten while he is working overtime are personal and, therefore, *90 nondeductible under section 24(a)(1) of the 1939 Code. We think that this is so whether the individual is an employee, partner, or sole proprietor. As for the costs of petitioner's meals at the supper meetings, there is no evidence that they were in excess of what petitioner would have been required to pay for his own personal purposes. Under the authority, therefore, of , those costs are not deductible. Respondent is sustained in his disallowance of the aforementioned deductions for supper expenses. The two remaining expense deductions to be considered were claimed by petitioner for 1950 on his individual return instead of the partnership return. The first of those deductions was for "Automobile Expenses" and our findings indicate that such deduction was correct with the following exceptions: (a) gasoline expenses were claimed for 2,286 gallons whereas we have found that, on the basis of the mileage driven by petitioner for business purposes, 2,000 gallons was all that was used; (b) a deduction of $86.40 for use of a second garage in addition to that customarily *91 used was claimed, whereas such a deduction was not claimed in the previous years in issue nor was there any evidence that use of the garage served a business purpose. Adjustments have been made for those items in our findings. A claimed deduction of $1,006.56 for "Entertaining Clients" is the second of the remaining deductions to be considered for 1950. A detailed breakdown of that account is contained in our findings. After a careful consideration of the evidence we conclude that entertainment expenses were incurred and paid in 1950 by petitioner in entertaining partnership clients of $419.60, and that this amount should be allowed as a deduction instead of the $1,006.56 claimed by petitioner. In arriving at our determination of the aforementioned claimed entertainment expenses we have paid particular attention to this Court's opinion in These last two above discussed expense deductions for 1950 were deducted from petitioner's individual return. They were partnership expenses and it seems safe to assume they were paid from partnership funds. There is certainly no evidence to the contrary. These expenses are not allowable as deductions from *92 petitioner's individual return as they represented partnership expenses and are deductible by the partnership in computing partnership income. ; . In a recomputation under Rule 50 these expenses should be deducted in computing partnership net income for the year 1950. Petitioner is, of course, taxable on his share of the partnership income which will result from this computation. Petitioner, in 1949, sold the home which he had purchased and lived in since 1931 for a gross sales price of $11,000. He reported $867.80 as his expenses of sale but respondent determined that such expenses were only $550. Since petitioner neither introduced any evidence nor argued in his brief that respondent's determination was in error, that determination is herein sustained. Petitioner's cost for the home in 1931 was $5,137.01. As his adjusted basis for sale he reported that cost, section 113 (a) of the 1939 Code, plus $4,707.15 which he allegedly expended on capital improvements and additions, section 113(b)(1)(A). Respondent, for lack of substantiation, reduced the reported sum spent on the improvements *93 and additions to $2,750. Petitioner was unable to produce bills or records substantiating the amounts he claimed were expended on many of the aforementioned capital items. However, the evidence indicates that the house was in a dilapidated condition when it was purchased and that petitioner in fact made many specified improvements and additions. We are convinced that his expenditures therefor were in excess of that determined by respondent and, exercising our best judgment based on the evidence, we have found them to be $4,000. See ; Camp Wolters Enterprises, Inc., 22 T.C. -, filed June 30, 1954. Petitioner's adjusted basis was, therefore, $9,137.01 ($5,137.01 plus $4,000). His profit on the sale of the house was $1,312.99 ($11,000 less $550 and less $9,137.01), half of which ($656.50) is reportable as long-term capital gain under section 117 of the 1939 Code. Decisions will be entered under Rule 50. Footnotes
1. The $91.47 is composed of entries of $68 for "Auto Repairs," which actually was for the purchase of tires, and $23.47 for gas and oil. These constituted a duplication of expenses for gas, oil and tires already charged in the "Automobile Expense" account for that year.↩
1. Petitioner did not claim depreciation on his car for either 1948 or 1949. The above depreciation figure is 90 per cent of one-fourth of the car's cost to petitioner.↩
2. "See , where Judge Learned Hand said: 'Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. * * * It is not fatal that the result will inevitably be speculative; many important decisions must be such.'"↩
3. The deduction for 1950 was taken in computing partnership income.↩
4. The deduction for 1950 was taken in computing partnership income.↩